**United States District Court**
**Southern District of New York**
_____

**HYPOXICO, INC.,**

        **Plaintiff,**                             02 Civ. 6191 (JGK)

        - against -                       **OPINION AND ORDER**

**COLORADO ALTITUDE TRAINING, LLC,**
**and LAWRENCE KUTT,**

        **Defendants/Third Party**
        **Plaintiffs,**

        - against –

**IGOR KOTLIAR,**

        **Third Party Defendant.**
_____

**JOHN G. KOELTL, District Judge:**

     Hypoxico, Inc. ("Hypoxico") originally instituted this action against the defendants, Colorado Altitude Training, LLC and its president, Mr. Lawrence Kutt (collectively "CAT"), alleging that CAT infringed Hypoxico's United States Patents, Nos. 5,964,222 ("the '222 Patent") and 5,799,652 ("the '652 Patent"). CAT moved to dismiss the Complaint and to transfer venue of the action. The Court denied both motions. See Hypoxico, Inc. v. Colorado Altitude Training LLC, No. 02 Civ. 6191, 2003 WL 21649437 (S.D.N.Y. Jul. 14, 2003). Hypoxico subsequently amended the Complaint to allege that CAT engaged in unfair competition and related acts against Hypoxico.

1

In a motion filed on October 21, 2004, CAT sought leave to amend its answer and counterclaims and for a declaration that it can proceed with a claim for infringement against Hypoxico and its president, Mr. Igor (Gary) Kotliar (collectively "Hypoxico"), for infringement of United States Patent No. 5,860,857 ("the '857 Patent") in its own name and without joining any additional parties. The parties have stipulated that CAT can assert any affirmative defenses and counterclaims relating to Hypoxico's '222 and '652 Patents and, as a result, that portion of CAT's October 21, 2004 motion seeking to amend its affirmative defenses and counterclaims is moot.[1] The second portion of CAT's motion, for a declaration of right to proceed with a claim of infringement of the '857 Patent solely in CAT's name, or, in the alternative, for an order joining AGA Aktiebolag ("AGA") and/or Kilpa-ja huippu-urheilun tutkimus-ja Kehittāmissāātiō r.s. (a/k/a Foundation for Research and Development in Olympic Sports) ("KIHU"), as parties to this action is now before the Court.

I.

The facts are set forth in the Court's prior Opinion and Order, <u>Hypoxico, Inc. v. Colorado Altitude Training LLC</u>, 2003 WL 21649437, and repeated to the extent necessary to decide the present motion. Hypoxico is a Delaware corporation with its

---

[1] CAT withdrew that portion of the motion and neither Hypoxico nor third-party defendant Igor Kotliar objected.

2

principal place of business in New York, New York.  (See Second Amend. Compl. ¶ 1.)  CAT is a Colorado limited liability corporation with its principal place of business in Boulder, Colorado.  (Id. ¶ 2.)  Mr. Kutt, a citizen of Colorado, is the president of CAT.  (Id. ¶ 3.)  All parties are involved in the sale of hypoxic training equipment meant to stimulate high altitude conditions for athletes to enhance their performance by simulating an environment whereby, for example, the athlete rests or sleeps at high altitude.  The patents at issue in the Complaint are directed to hypoxic training equipment invented by Mr. Kotliar, president of Hypoxico.  Hypoxico alleges that CAT produces products that infringe on Hypoxico's patents.  CAT, in turn, alleges that Hypoxico violates the '857 Patent pursuant to which CAT produces its products.  (See U.S. Patent No. 5,860,857, attached as Ex. 1 to Decl. of Robert R. Brunelli dated Oct. 20, 2004 ("Brunelli Decl.") in Support of Def.'s Motion.)

The parties agree that the '857 Patent is owned by AGA, and exclusively licensed to AGA's master licensee, KIHU.  The parties dispute whether the sublicensing agreement between KIHU and CAT also conveyed "all substantial rights" in the '857 Patent to CAT.  If CAT received all substantial rights in the '857 Patent by virtue of its sublicensing agreement with KIHU, it is clear that neither AGA nor KIHU are necessary parties to this action and that CAT can then proceed with its infringement claim solely in

its own name.  CAT would be deemed the effective "patentee" under 35 U.S.C. § 281.  See Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377-78 (Fed. Cir. 2000).  If CAT has not received all substantial rights, then CAT argues, in the alternative, that AGA is a necessary party and should be added to the action pursuant to Federal Rule of Civil Procedure 19.

II.

Federal Circuit law applies to the present motion, which involves the determination of CAT's standing to proceed in its own name as a matter of patent law.  As a general principle, Federal Circuit law governs issues of patent law, while the law of the Second Circuit applies to non-patent matters.  See Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999); see also Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003).

Under the Patent Act of 1952 only "a patentee shall have remedy by civil action for infringement of his patent."  35 U.S.C. § 281.  The "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee."  35 U.S.C. § 100(d).  Thus, under the statute, the right to sue for infringement is ordinarily an incident of legal title to the patent.  See Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995) (citing Waterman v. Mackenzie, 138 U.S. 252 (1891)).  An exclusive licensee

4

ordinarily must join the patent owner as a plaintiff to seek relief from infringement. See Independent Wireless Tel. Co. v. Radio Corp., 269 U.S. 459 (1926) (interpreting predecessor statute and holding that patent owner was an indispensable party in suit brought by an exclusive licensee); Abbott, 47 F.3d at 1131; see also Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., No. IP-96-1718-C-H/G, 2001 WL 388874, at *2 (S.D. Ind. Mar. 12, 2001).

There is an exception to the general rule that an exclusive licensee ordinarily must join the patent owner as a plaintiff: an exclusive licensee may bring an infringement action on its own if the license amounts to an assignment of "all substantial rights" under the patent. See Prima Tek II, 222 F.3d at 1377-78. The assignee-licensee who holds "all substantial rights" may be deemed the effective "patentee" under 35 U.S.C. § 281. See Textile Productions, Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) (noting where exclusive licensee holds 'all substantial rights' under a patent, "[s]uch a licensee is in effect an 'assignee' and therefore a patentee.") To constitute an assignment, a licensee typically must transfer the entire bundle of rights in the patent. See Pfizer Inc. v. Elan Pharmaceutical Research Co., 812 F. Supp. 1352, 1372 (D. Del. 1993) ("These rights are the right of exclusivity, the right to

5

transfer and most importantly the right to sue infringers.") (citation and internal quotation marks omitted).

In contrast to an exclusive licensee, a non-exclusive licensee has no right to exclude others from making, using, or selling the licensed products, and has no legally recognized interest that entitles it to bring or join an infringement action. See Ortho Pharmaceutical Corp. v. Genetics Institute, 52 F.3d 1026, 1033-34 (Fed. Cir. 1995); accord Kalman v. Berlyn Corp., 914 F.2d 1473, 1481 (Fed. Cir. 1990) ("It is well settled that a non-exclusive licensee of a patent has no standing to sue for infringement."). This remains true even though the license holder may have suffered an "injury in fact" caused by the infringement. See Ortho, 52 F.3d at 1031 ("economic injury alone does not provide standing to sue under the patent statute"); see also Cardiac Pacemakers, Inc., 2001 WL 388874, at *2.

Patent law also recognizes a status in between an assignee, who has "all substantial rights" under the patent and who may initiate an infringement action on its own, and a non-exclusive licensee, who may neither bring nor join an infringement action. Id. at *3. The party in between is the "co-plaintiff".

> 'To have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone.' Ortho, 52 F.3d at 1031 (affirming dismissal in

6

favor of defendant because non-exclusive licensee lacked co-plaintiff standing to pursue its claims for damages). In other words, co-plaintiffs in an infringement action share the proprietary rights associated with patent ownership to some greater or lesser extent.

Id. (collecting cases).

To determine whether CAT received any rights in the '857 Patent through its sublicense with KIHU, it is necessary to examine both the AGA-KIHU Agreement, and the KIHU-CAT Agreement.[2] See Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001); Ortho, 52 F.3d at 1032 ("[The court] must examine the licensing agreement to determine whether the parties intended to effect a transfer of proprietary rights to the licensee as an incident to protection of its interests.") (citing Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 874 (Fed. Cir. 1991) (intent of parties controlling).) It is essential to examine the rights retained by the grantor in each agreement. See Prima Tek II, 222 F.3d at 1378. Neither AGA nor KIHU is a party to the action at this point, and neither has submitted evidence to indicate what each party intended in the relevant licensing agreements.[3]

---

[2] The license executed between AGA and KIHU is attached as Exhibit 3 to the Brunelli Declaration and is referred to throughout this Opinion as the "AGA-KIHU Agreement." Similarly, the sublicensing agreement executed between KIHU and CAT is attached as Exhibit 2 to the Brunelli Declaration and is referred to as the "KIHU-CAT Agreement" throughout this Opinion.

[3] Hypoxico argues that, pursuant to Federal Rule of Evidence 802 the AGA-KIHU Agreement is inadmissible hearsay. In response, CAT supplemented the record by submitting another copy of the AGA-KIHU Agreement with a declaration by Kalle Pirilä, counsel for

7

The first step in the alleged transfer of rights to CAT is the AGA-KIHU Agreement. Although the parties agree that KIHU is an "exclusive" licensee, the Court disregards the title given to KIHU in the License Agreement when determining the legal effect of the transfer. See Vaupel, 944 F.2d at 874 (noting that whether provision constitutes an assignment or license is determined by intention of parties and substance of what was granted). If KIHU never obtained a proprietary interest in the '857 Patent, then neither KIHU or CAT would have standing to bring this lawsuit without joining AGA. See Prima Tek II, 222 F.3d at 1381-82 (holding that both licensee and sublicensee lacked standing where agreement between patent owner and licensee did not convey substantial rights in patents in suit; licensee could not convey substantial rights by sublicense when it had never acquired such rights itself).

The AGA-KIHU Agreement entered into force on January 21, 2003, and replaced a previous agreement dated September 2, 1994. The agreement described the parties' rights to commercialize the

---

KIHU in Finland. When the evidence offered has legal significance independent of the truth of any statement contained in it, it is not hearsay. Fed. R. Evid. 801(c), Advisory Committee Notes, 1972 Proposed Rules; see also Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 540 (5th Cir. 1994). A contract is a type of verbal act "to which the law attaches duties and liabilities." Mueller v. Abdnor, 972 F.2d 931, 937 (8th Cir. 1992). Consequently, a contract has independent legal significance and is not hearsay. Id. The AGA-KIHU Agreement is plainly not hearsay because it is not offered for the truth of the matters asserted in the Agreement.

8

technology covered by a number of patents, including the '857 Patent. The AGA-KIHU Agreement was to be governed and construed in accordance with Swedish law, and "[a]ny dispute between the parties relating to the subject matter [of the Agreement] shall be referred to the public courts in Sweden."[4] (See AGA-KIHU Agreement ¶ 14.)

The terms of the AGA-KIHU Agreement plainly indicate that the parties intended that KIHU serve as AGA's exclusive licensee, with standing to sue for patent infringement. "The two keys to an exclusive license are the right to practice the invention in a given territory and the patentee's promise that others will be excluded from practicing the invention within that territory." Aspex Eyewear, Inc., v. Elite Optik, Inc., No. Civ. A.398CV2996D, 2002 WL 1751381, at *5 (N.D. Tex. Apr. 4, 2002). According to the terms of the AGA-KIHU Agreement, KIHU was granted these two key rights. Pursuant to Section Three of the Agreement, entitled

---

[4] CAT argues that KIHU has the right to enforce the '857 Patent against infringers and to collect damages for that infringement under both United States and Swedish law. (See CAT Brief in Support of Mot. at 4 & n.2) However, Swedish law is not relevant to the present motion, which involves a suit on a United States patent in a United States court under a United States statute, 35 U.S.C. § 281. Although the parties' rights and obligations under the AGA-KIHU Agreement are governed by Swedish law pursuant to a contractual choice-of-law provision, the question of standing to sue for patent infringement is a matter of United States law. See Pfizer, 812 F. Supp. at 1370 n.23. At oral argument, the parties agreed that it is unnecessary to consider Swedish law in order to decide this motion. (See Tr. of Oral Argument dated June 8, 2005 at 13-14, 24.)

9

"Grant," AGA and KIHU agreed that KIHU had "the exclusive worldwide right to manufacture, have manufactured, use, market, and sell Products under the Patents." KIHU also had "the right to grant licenses to any third parties." AGA agreed "to refrain from manufacturing, having manufactured, using, marketing and selling Products under the Patents." Accordingly, KIHU held a worldwide exclusive license under the AGA-KIHU Agreement.

Although KIHU was the exclusive licensee under the AGA-KIHU Agreement, AGA retained some rights in the licensed patents. AGA retained the right to consult with KIHU before either party filed suit against alleged third party infringers. Section Seven, entitled "Patent [I]nfringement," provided that:

> AGA and KIHU shall without delay inform each other whenever they have reason to anticipate that a third party infringes the Patents. The parties shall then agree on appropriate measures to be taken.
>
> Unless otherwise agreed, any compensation from a third party infringer shall first be used to cover the costs incurred to defend the Patents from infringement.
>
> Notwithstanding the aforesaid the parties shall always keep each other informed of any actions taken to protect the Patents from infringement.

(AGA-KIHU Agreement ¶ 7.) Because AGA and KIHU agreed to consult one another as to the proper course of action in the face of infringement and to "agree on appropriate measures to be taken," KIHU's right to sue for infringement is significantly limited, and KIHU could not

10

transfer the complete right to sue for infringement of the '857 Patent to CAT. As a result, CAT "does not enjoy the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue." Abbott, 47 F.3d at 1132 (holding right to indulge infringements to be significant right and therefore indication there was no assignment); see also Aspex, 2002 WL 1751381, at *4.[5] In fact, AGA's retained right to indulge infringements is generally sufficient to make a patentee who grants an exclusive license a necessary party to an infringement action brought by the licensee. See id. (collecting cases). The retention of this right indicates that AGA did not intend to assign to KIHU the entire bundle of its rights in the '857 Patent. See id.

Reviewing the entire Agreement, the limitation on KIHU's right to sue third party infringers appears to be AGA's most

---

[5] The Court of Appeals for the Federal Circuit distinguished Abbott in Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000). In Speedplay, unlike in Abbott, the licensor did not retain the right to participate in any infringement action. Moreover, in Speedplay, unlike in Abbott, the licensee could render the right of the licensor to sue infringers nugatory by granting the alleged infringer a royalty-free sublicense. Speedplay, 211 F.3d at 1251. In this case, Abbott rather than Speedplay is more on point. The AGA-KIHU Agreement provided that, with respect to third party infringers, AGA and KIHU "shall . . . agree on appropriate measures to be taken." KIHU was not granted discretion to bring infringement suits. Moreover, CAT has appropriately not argued that KIHU had the right to grant royalty-free sublicenses. KIHU had to account to AGA for royalties, and it would frustrate that requirement if products could be sold by sublicensees without royalties. See Aspex, 2002 WL 1751381, at *4 n.2.

11

substantial retained right.  Hypoxico points to other provisions in the AGA-KIHU Agreement that provide each party with the right to account to the other for "license revenues obtained form [sic] third parties."  (<u>See</u> AGA-KIHU Agreement ¶ 8.)  Royalty revenue could therefore arguably be generated by either AGA or KIHU, and is arguably inconsistent with the provision of the Agreement that AGA undertook to "refrain from manufacturing, having manufactured, using, marketing and selling Products under the Patents."  (<u>See</u> AGA-KIHU Agreement ¶ 3.)

CAT maintains that the retained rights in this case are no greater than the rights that the patent owner retained and which were insufficient to deprive a licensee from suing in its own name in <u>Vaupel</u>.  However, the requirement that AGA and KIHU consult one another and agree on the proper course of action in the face of any infringement indicates the parties' intent that AGA would share the right to sue for infringement with KIHU, and that litigation would occur only if KIHU and AGA agreed to bring suit against third party infringers.  AGA therefore has a significantly greater interest in the licensed patents than the patent owner in <u>Vaupel</u>, and therefore CAT does not have a sufficient interest in the '857 Patent to sue on its own as the "patentee" pursuant to 35 U.S.C. § 281.

III.

The parties agree that whatever rights KIHU was granted under the AGA-KIHU Agreement were passed on to CAT under the KIHU-CAT Agreement, in which:

> KIHU represents and warrants that it has the exclusive rights under the Licensed Patent[s] and hereby grants to CAT the right to enforce rights under the Licensed Patent[s] against any other third party . . . . KIHU warrants and represents that it has the full right and power to grant the license and other rights described herein and granted hereby . . . and that there are no outstanding agreements, assignments, or encumbrances inconsistent with the provisions of this Agreement other than as expressly set forth herein.

(See KIHU-CAT Agreement, Art. II.C, E)

The KIHU-CAT Agreement expressly gives CAT whatever rights to exclude, transfer, and sue alleged infringers that KIHU had obtained from AGA. However, because AGA did not surrender all of its substantial rights in the '857 Patent to KIHU, CAT is also limited in its ability to sue for infringement. The KIHU-CAT Agreement cannot provide any more rights to CAT than KIHU had and those rights are insufficient to bring a patent infringement suit without AGA's participation.[6]

## IV.

### A.

Federal Rule of Civil Procedure 19, the federal joinder rule, provides that a person who can be joined as a party shall be joined if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may impair or impede the person's ability to protect that interest or leave any of the parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. See Fed. R. Civ. P. 19(a); Abbott, 47 F.3d at 1133.

---

[6] At oral argument, the parties agreed that KIHU granted whatever rights in the '857 Patent KIHU obtained from AGA to CAT. Because CAT holds any and all rights that KIHU obtained from AGA, the parties agree that KIHU is not a necessary party. (See Tr. of Oral Argument dated June 8, 2005, at 14, 25.)

13

Where there are disputes regarding the terms and conditions of the patent transfer, including a dispute with respect to whether the transferee is a licensee or assignee, it would be improper under Rule 19 to make such a determination absent evidence from the transferor. See Pfizer, 812 F. Supp. at 1375.

AGA's retained right to indulge infringements is generally sufficient to make a patentee who grants an exclusive license a necessary party to an infringement action brought by the licensee. See Aspex, 2002 WL 1751381, at *4. In addition, CAT has failed to demonstrate that the right to sue for infringement of the '857 Patent vests entirely in CAT. Accordingly, AGA should be joined pursuant to Rule 19(a) if it is feasible to do so.

After oral argument of the motion, CAT submitted an agreement executed by CAT and AGA after CAT initiated this action, in which AGA agrees that AGA is aware that CAT has instituted this action and that AGA is entitled to join as a party but refuses to do so voluntarily. (See "AGA-CAT Agreement to be Bound" dated Jan. 17, 2005 at 2.) The agreement between AGA and CAT further provides that AGA agrees to be bound by any judgment in this action, and that AGA considers itself beyond the jurisdiction of this Court. (Id.) CAT argues that this agreement eliminates the need to join AGA as a party because the agreement eliminates the risk of multiple lawsuits and provides evidence that AGA agrees that CAT has the right to proceed alone.

CAT's argument is without merit. AGA asserts that AGA is beyond the jurisdiction of this Court and, accordingly, any judgment might not be enforceable against AGA. In any event, AGA's agreement to be bound by the Court's judgment, executed by AGA and CAT in the course of litigation, could not, without more, grant CAT standing to bring this suit in its own name without the joinder of AGA. As the Prima Tek II court recognized:

> Standing to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue and who will be bound by judgments . . . . Just as a "right to sue" clause cannot confer standing on a bare licensee, neither can a patent owner's agreement to be bound by judgments against a licensee circumvent the rule of Independent Wireless that the patent owner must ordinarily join, in any infringement action, an exclusive licensee who possesses less than all substantial rights in the patent. To hold otherwise would be to allow a patent owner to effectively grant a "hunting license," solely for the purpose of litigation, in the form of a pro forma exclusive license, e.g., covering only a minuscule territory.

Prima Tek II, 222 F.3d at 1381. The AGA-CAT Agreement to be Bound does not alter the conclusion that AGA must be joined as a party under Rule 19.

B.

The parties dispute the procedure that should be followed to accomplish AGA's joinder. Rule 19(a) provides that the court shall order that the person described in that Rule shall be joined as a party. If the person should join as a plaintiff but refuses to do so, the person shall be made a defendant, or, in a proper case, an involuntary plaintiff. See Fed. R. Civ. P. 19(a). The Advisory Committee Notes to Rule 19(a) cite Independent Wireless as an example of a "proper case." In that case, the Supreme Court affirmed the joinder of a patent owner as an involuntary plaintiff in a patent infringement suit by a licensee where the patent owner was requested to join the lawsuit but declined to do so and was without the jurisdiction of the Court. See Independent Wireless, 269 U.S. at 462, 473. See also Cilco, Inc v. Copeland Intralenses, Inc., 614 F. Supp. 431, 433-34 (S.D.N.Y. 1985) (involuntary joinder of patent licensor proper only if licensor was obligated to join the litigation and refused to do so). The patent owner must be given the opportunity to join the action before it can be made an involuntary party:

> the obligation the owner is under to allow the use of his name and title [is] to protect all lawful exclusive licensees and sublicensees against infringers . . . . The owner beyond the reach of process may be made coplaintiff [against its will] by the licensee, but not until after he has been requested to become such voluntarily. If he declines to take any part in the case, though he knows of its imminent pendency and of his obligation to join, he will be bound by the decree which follows.

Independent Wireless, 269 U.S. at 473.

CAT requests that the Court join AGA as an involuntary plaintiff at this time because CAT has allegedly already informed AGA of its belief that Hypoxico was infringing on the '857 Patent, and offered AGA the right to join the action as a party co-plaintiff, but that AGA refused. (See Brunelli Decl. ¶ 7; see also AGA-CAT Agreement to be Bound.)

However, the involuntary plaintiff procedure of Rule 19(a) and Independent Wireless should only be used when the person to be joined is not subject to the Court's jurisdiction. See Cilco, 614 F. Supp. at 433 n.2. If the party is subject to the Court's jurisdiction, the party should be served with process and the Court can thereafter align the parties as necessary. Id.

In this case, AGA should be subject to process under the Hague Convention and, if it asserts a defense of lack of personal jurisdiction, the Court would decide whether it is in fact beyond the jurisdiction of the Court. But that procedure should be followed.

CONCLUSION

16

party co-plaintiff, but that AGA refused. (See Brunelli Decl. ¶ 7; see also AGA-CAT Agreement to be Bound.)

However, the involuntary plaintiff procedure of Rule 19(a) and Independent Wireless should only be used when the person to be joined is not subject to the Court's jurisdiction. See Cilco, 614 F. Supp. at 433 n.2. If the party is subject to the Court's jurisdiction, the party should be served with process and the Court can thereafter align the parties as necessary. Id.

In this case, AGA should be subject to process under the Hague Convention and, if it asserts a defense of lack of personal jurisdiction, the Court would decide whether it is in fact beyond the jurisdiction of the Court. But that procedure should be followed.

## CONCLUSION

For the reasons explained above, CAT's motion to proceed in its own name against Hypoxico for the alleged infringement of the '857 Patent is **denied**, and AGA should be joined to this action as a necessary party. CAT should serve AGA under the Hague Convention in accordance with this Order.

**SO ORDERED.**

**Dated: New York, New York
June 13, 2005**

John G. Koeltl
United States District Judge