UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/09

-------------------------------------------x
                             :

HYPOXICO INC.,                    :

               Plaintiff,     :       02 Civ. 6191 (TPG)

                             :

       – against –         :       **OPINION**

                             :

COLORADO ALTITUDE TRAINING, et al.,  :

                             :

             Defendants.    :

                             :
-------------------------------------------x

      This patent infringement case was brought to trial on January 12, 2009.  After a three-week trial, the jury returned a verdict in plaintiff's favor.

      This opinion addresses the following pending matters. Defendants asserted a claim of inequitable conduct, which has not been formally decided by the court.  Defendants moved to dismiss the case during trial for lack of subject matter jurisdiction, and renewed this motion in writing after trial.  Defendants also filed a written motion for judgment as a matter of law during trial and, after trial, filed a renewed motion for judgment as a matter of law or, in the alternative, a new trial. Plaintiff has moved for a permanent injunction, an accounting of infringing sales, and an award of pre-judgment and post-judgment interest.  By letter, plaintiff has also requested the entry of judgment in its favor.

Defendants' inequitable conduct claim is dismissed.  Defendants' motion to dismiss for lack of jurisdiction and their initial motion for judgment as a matter of law are denied.  Defendants' renewed motion for judgment as a matter of law is denied, but their alternative motion for a new trial is granted.  Plaintiff's motion for a permanent injunction, an accounting, and an award of interest, and its request for entry of judgment, are denied.

## Background

This action concerns three patents for hypoxic training equipment, which simulates high-altitude environmental conditions by creating a low-oxygen environment.  This technology is believed to enhance stamina and endurance by allowing athletes to exercise, live, or sleep in hypoxic environments.

Patents 5,799,652 and 5,964,222 concern devices invented by Igor Kotliar and assigned to Kotliar's company, Hypoxico, which is the plaintiff in this action.  Hypoxico claims that the products sold by defendant Colorado Altitude Training ("CAT") infringe claims 5 and 19 of the '652 patent and claim 3 of the '222 patent.  Hypoxico also claims that defendant Lawrence Kutt, the CEO of CAT, is liable for inducing CAT's infringing activities.  CAT, which holds an exclusive license to patent 5,860,857, counterclaims that Hypoxico's products infringe the '857 patent.  With respect to Hypoxico's infringement claims, CAT asserts

several defenses, including that the '652 and '222 patents are unenforceable due to inequitable conduct by Kotliar.

The accused devices use an apparatus that separates air into low-oxygen (i.e., "hypoxic") and high-oxygen components and then feeds the hypoxic air into an enclosed space, thereby creating a low-oxygen environment in that space. The enclosures used in these systems include rigid enclosures set up in a room, soft-walled tents, entire rooms, and even larger structures such as barns.

CAT's products can be categorized as "controlled" or "uncontrolled" systems. In the controlled systems, the air separation unit works in conjunction with a computer controller, which controls the activity of the air separation unit based on the current oxygen level, carbon dioxide level, barometric pressure, and temperature. In the uncontrolled systems, the air separation unit works independently, although a user can adjust the desired oxygen content.

The uncontrolled systems can be further grouped into three subcategories. In the "blow-through" systems, the air separation unit resides outside of the enclosure. It takes in ambient air from outside the enclosure and then feeds hypoxic air into the enclosure. In "recirculating" systems, the air separation unit is also placed outside the enclosure, but takes in air from inside the enclosure. As the machine operates, it therefore continually takes in air that has already become somewhat hypoxic, rather than air with a normal oxygen level. Finally,

- 3 -

in a "pump-out" system, the air separation unit resides within the enclosure, and takes in air from inside the enclosure.  In all three types of uncontrolled systems, high-oxygen air is pumped outside the enclosure.  The uncontrolled systems all depend on some air leaking out through the walls of the enclosure, in order to prevent the pressure inside the enclosure from becoming too high as air is pumped in.

The special interrogatory form completed by the jury asked if Hypoxico had proven infringement as to each category or subcategory described above.  For the '652 patent, the first category of systems was "Room and Equine Systems."  This category was further divided into a subcategory for "Uncontrolled Room Systems" and "Controlled Room and Equine Systems."  The second category was "Tent Systems," which was divided into "Controlled Tent Systems" and "Uncontrolled Tent Systems," the latter of which contained subcategories for blow-through systems, recirculating systems, and pump-out systems.  The jury found infringement of claims 5 and 19 of the '652 patent by each of these categories of systems.

With respect to the '222 patent, the jury was only asked to make findings with respect to the "Tent Systems" categories described above.  The jury found that claim 3 of the '222 patent was infringed by CAT's blow-through systems and its controlled tent systems, but not by the recirculating and pump-out systems.

The jury also made the following findings.  It found that
defendant Kutt induced CAT's infringing activity, and that Hypoxico had
not infringed the '857 patent.  It found that Hypoxico had proven lost
profits with respect to the infringed claims, and awarded $4,325,000 to
Hypoxico.  However, the jury found that the infringement by CAT, and
Kutt's inducement of that infringement, were not willful.

## Inequitable Conduct Claim

The crux of defendants' inequitable conduct claim is that when
Kotliar applied for the '222 patent, he failed to disclose the contributions
of an individual named Shaun Wallace.  Defendants claim that in July
1997, Wallace (in consultation with Kotliar) developed a "tent" system to
enable athletes to sleep in a hypoxic environment, which Wallace
believed would yield better results for athletes than the "room" system
that Hypoxico had previously produced.  Wallace developed a prototype
tent system and showed it to Kotliar in July or August 1997.  However,
Kotliar never told Wallace that he was independently working on a tent
system.  Nonetheless, in December 1997, Kotliar filed the '222
application, without disclosing Wallace's work.

A patent may be rendered unenforceable for inequitable conduct
if an applicant, with intent to mislead or deceive the examiner, fails to
disclose material information or submits materially false information to
the PTO during prosecution.  Digital Control, Inc. v. Charles Mach.
Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006).  A party alleging

- 5 -

inequitable conduct must prove both materiality of the conduct and deceptive intent by clear and convincing evidence.  Id.

Defendants failed to establish that Kotliar submitted false information to the PTO.  Defendants' argument was premised on the testimony of Wallace and another witness, Sheldon Serrao, which established that Wallace was working on a prototype of a tent system during the summer of 1997.  The testimony also indicated that Kotliar saw this prototype and discussed it with Wallace.

Nonetheless, other evidence indicated that Kotliar was independently working on a similar invention.  Specifically, the court finds credible the testimony of Nicholas Ohotin, who noted that during Ohotin's wedding in May 1997, Kotliar pressed Ohotin to discuss Kotliar's plans for a tent system.  It is certainly plausible that Kotliar had developed the idea of a tent system independently but decided not to reveal his plans to Wallace.  Taken together, this evidence does not show that Kotliar deceived the PTO in claiming that he invented the tent system.  There is thus no basis for a finding of inequitable conduct.

## Subject Matter Jurisdiction

Defendants move to dismiss this action for lack of subject matter jurisdiction.  The motion is denied.

The premise of the motion is that Hypoxico did not hold legal title to the patent at the time this action was brought, and therefore could not satisfy the statutory prerequisites for a patent infringement action.

- 6 -

Defendants argue that there is no evidence that Kotliar, the patentee of the '652 and '222 patents, executed a valid assignment of the patents to Hypoxico prior to August 2, 2002, the date this lawsuit was brought.

A patent infringement action must generally be brought by the party holding title to the patent at the time of the asserted infringement. Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed. Cir. 1991). The assignee of a patent is a proper plaintiff under this rule, but an assignment is only valid if it was made in writing. 35 U.S.C. §§ 100(d); 261.

Defendants contend that Kotliar did not assign the patents to Hypoxico in time to bring this action. At trial, plaintiff was unable to produce written assignments that predated the filing of this action. Kotliar testified that the original assignments were lost, and plaintiff therefore introduced documents executed by Kotliar on December 14, 2006. With respect to the '652 patent, the document states that it "confirm[s] the prior assignment dated on or about April 10, 1996 to Hypoxico Inc." With respect to the '222 patent, the document states that it "confirm[s] the prior assignment dated on or about December 3, 1997 to Hypoxico Inc."

Although defendants question the reliability of this evidence, there is sufficient evidence to find that Kotliar assigned the patents to Hypoxico before the commencement of this litigation. It is true, as defendants contend, that there are inconsistencies between Kotliar's

testimony and various documents that Kotliar subsequently filed with
the PTO stating that the patents had not been previously assigned.
However, at the time these documents were filed with the PTO, Kotliar
was acting without the advice of counsel, and it is likely that he signed
them without understanding that they contained language contradicting
the prior assignment.  Kotliar's contention that the original assignment
forms were lost is also quite plausible.

The court therefore finds that the patents were validly assigned to
Hypoxico before the filing of this litigation, and that Hypoxico therefore
had standing to bring this action.  Defendants' motion to dismiss for lack
of subject matter of jurisdiction is denied.

## Motion for Judgment as a Matter of Law or a New Trial

Defendants move for judgment as a matter of law or a new trial.
The court has considered the arguments in favor of judgment as a matter
of law, but has concluded that the standard for this remedy has not been
met.  However, the court finds sufficient error in the jury's verdict to
grant a new trial as to both liability and damages.

This can be most clearly demonstrated with regard to CAT's
controlled systems, which constitute a significant part of CAT's product
line.  The evidence did not show that CAT's controlled systems operate in
the manner specified by the asserted claims.  The '652 claims require the
air pressure and oxygen concentration in the enclosure to be maintained
by the breathing chamber in combination with the gas separation device.

- 8 -

The '222 claim requires the air pressure to be regulated essentially through the natural escape of air through pores in the tent's wall. However, the air pressure and oxygen content in CAT's controlled systems are maintained by the controller, not by the breathing chamber and air separator.  Moreover, the controlled systems intentionally vary the oxygen concentration, rather than "maintaining the air . . . at a substantially constant oxygen concentration" as required by the claims.

The court will also grant a new trial on the uncontrolled systems. It would be artificial to attempt to separate the issues of the uncontrolled and controlled systems at a new trial, especially since, as discussed below, the trial will address plaintiff's damages claims with respect to all of the accused systems.

The only evidence of damages offered by plaintiff, the testimony of Ilya Bykov, was deeply flawed and cannot reasonably form the basis of a damages award for lost profits.  Bykov offered a calculation of the amount of profits lost by Hypoxico as a result of CAT's infringing activities.  The analysis assumed that Hypoxico, a small operation that used minimal marketing efforts, had the manufacturing and marketing capacity to replicate all of the sales executed by CAT, a company that appears to have been well run, highly professional, and motivated by sound business strategy.  The analysis also assumed that all of the purchasers of CAT's products would have purchased Hypoxico's products instead.  These assumptions were neither credible nor supported by

evidence.  Plaintiff therefore failed to make the showing necessary to demonstrate its entitlement to lost profits, since it did not demonstrate a reasonable probability that it could have made sales equal in quantity to the infringing sales, or that it had the manufacturing and marketing capability to exploit demand for that volume of sales.  See Water Tech. Corp. v. Calco, Ltd., 850 F.2d 660, 671-72 (Fed. Cir. 1988).

Finally, the court finds serious error in the jury's finding that Kutt is liable for inducing infringement by CAT.  Plaintiff argues that Kutt should be held liable because he knew of Hypoxico's patents and was the principal decision maker at CAT.  Plaintiff also cites a letter in which Kutt described a CAT product (misleadingly, in plaintiff's view) as a "nitrogen product."  However, this was not sufficient evidence for the jury to find that Kutt specifically intended to cause CAT to infringe Hypoxico's patents.

The court will therefore hold a new trial on the issues discussed above.  The causes of action that Hypoxico declined to pursue at trial are dismissed with prejudice.  These include Hypoxico's allegations of infringement of claims 1-4, 9-11, 13, and 15-18 of the '652 patent and infringement of claims 1, 2, 4, 6-8, 13, and 16-19 of the '222 patent. These also include the allegations of unfair competition, trademark infringement, trade libel, and infringement of patent 5,924,419.  Since defendants have not sought any relief with respect to the jury's finding

against them on the counterclaims, the counterclaims are also dismissed.

In light of the issues that must be determined in future proceedings, it would be premature to enter judgment in plaintiff's favor. Plaintiff's request for entry of judgment is therefore denied.

### Motion for a Permanent Injunction, an Accounting, and an Award of Interest

Plaintiff seeks a permanent injunction against CAT's manufacture, use, and sale of any product (including controlled systems) that infringes claims 5 or 19 of the '652 patent or claim 3 of the '222 patent.

A court may grant a permanent injunction when a plaintiff demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Hypoxico has not established that it is entitled to a permanent injunction. In light of the court's decision to grant a new trial, such an injunction would be premature. Moreover, Hypoxico has not established that damages would be inadequate to compensate for any injury it has

incurred.  In this regard, Hypoxico argues that CAT's infringement has resulted in the erosion of Hypoxico's prices and the loss of its market share.  However, the only evidence that Hypoxico introduced at trial to support this contention was the testimony of Ilya Bykov, the expert whose testimony, as discussed above, was not based on sufficiently rigorous analysis.  The portion of Hypoxico's motion seeking a permanent injunction is therefore denied.

Hypoxico also seeks an accounting of sales made by CAT that were not presented to the jury at trial—that is, sales occurring after December 31, 2006.  Since Hypoxico must present evidence of its damages at a new trial, this portion of the motion is denied as moot.  However, since Hypoxico will be entitled to present evidence at trial regarding damages it incurred after 2006, discovery about such sales may be appropriate.

Finally, Hypoxico seeks an award of prejudgment and post-judgment interest.  Since, as discussed above, plaintiff offered no reliable evidence of its damages, there is currently no sound basis for calculating an appropriate interest award.  This aspect of plaintiff's motion is therefore also denied.

## **Conclusion**

The court finds that plaintiff did not engage in inequitable conduct in the prosecution of the '222 patent.  Defendants' motion to dismiss for lack of jurisdiction (docket entry 123) is denied.  Defendants'

initial motion for judgment as a matter of law, which was filed during

trial (docket entry 124), is denied.  Defendants' renewed motion for

judgment as a matter of law or, in the alternative, a new trial, which was

filed post-trial (docket entry 128), is granted in part and denied in part,

as set forth above.  Plaintiff's motion for a permanent injunction, an

accounting of infringing sales, and an award of pre-judgment and post-

judgment interest (docket entry 140) is denied.

     SO ORDERED.

Dated:  New York, New York
       May 21, 2009

                                   Thomas P. Griesa
                                   U.S.D.J.